STATE OF VERMONT

ENVIRONMENTAL COURT

| | |
|---|---|
| In re: | } |
| Rozzi Real Estate, Inc., Subdivision Final Plan Application | } Docket No. 225-10-05 Vtec |
| (Appeal of Koval and McCormack) | } |
| | } |

<u>Decision and Order on Appellee-Applicant's Motion for Summary Judgment</u>

Appellants Eric Koval and Thomas McCormack (Appellants) appealed from a decision of the Planning Commission of the Town of Essex granting final plan approval to Appellee-Applicant Rozzi Real Estate, Inc.'s application for a seven-lot subdivision of property located at 197 Weed Road. Appellants represent themselves; Appellee-Applicant Rozzi Real Estate, Inc. is represented by Elizabeth M. Demas, Esq.; and the Town is represented by William F. Ellis, Esq. Appellee-Applicant has moved for summary judgment on each of the seven questions in Appellants' Statement of Questions.

The following facts are undisputed unless otherwise noted. Appellee-Applicant owns a parcel of land, approximately 23.2 acres in area, located at 197 Weed Road, in the Agricultural Residential zoning district. The property as a whole is bounded on the north by Weed Road and on the east by Naylor Road. Lot 1 is bounded on the west by a private residential lot. Lot 7, which is proposed to be deeded to the Town, consists of an area within the floodplain of the Browns River that is bounded on its west, south and east by a loop of the Browns River, connecting with a long, narrow area extending along the northerly bank of the Browns River, generally within the 100-year floodplain, and connecting with Naylor Road along the southerly and easterly boundaries of Lot 6. The easterly end of Lot 7 lies between Lot 6 and the former school house referred to on the proposed subdivision plat and in Appellants' documents as the Grace Naylor property.

1

Much of Lot 7, as well as the southerly portions of development Lots 1 through 5, is also located within the Flood Plain zoning district.[1]  In addition, an easement for trail use (footpath and bridal trail)  is proposed to be deeded to the Town along the Weed Road frontage of the property.

Appellant Eric Koval owns property directly across Weed Road from the proposed project.  While neither party provided the minutes of the August 25, 2005 Planning Commission hearing, the decision shows that a copy was sent to Mr. Koval, from which we may deduce that he either appeared and testified at the hearing or submitted evidence or a statement of concern in writing  sufficient to qualify as a party-appellant under 24 V.S.A. §4465(b)(3) and §4471(a), and under 10 V.S.A. §8504(b)(1).  Neither the site plan nor the Planning Commission's decision reveals whether Appellant Thomas McCormack qualifies as a party-appellant under those sections; however, no motion to dismiss him as a party is at present before the Court.

Appellee-Applicant proposes to subdivide the property into six three-acre building lots, and a seventh 5.2-acre open space lot along the Brown's River proposed to be dedicated to the Town.  Lots 1 and 2 share a single driveway access from Weed Road, Lots 4 and 3 also share a single driveway access from Weed Road, while Lots 6 and 5 share a single driveway access from Naylor Road. The open space Lot 7 has access directly from Naylor Road.  In addition, the southerly portion of each proposed house lot is designated as a conservation portion of those lots; this portion comprises the steep bank down to the Browns River.  All of the property is undeveloped, except for an existing barn, stable, and shed located towards the Weed Road frontage of Lot 6.

As discussed in the unappealed decision on preliminary plan approval submitted

---

[1]  The parties have not supplied the portion of the Zoning By-Laws relating to this district.

by Applicant, these structures are identified in the Town Plan as part of an historic 19th century farmstead cluster. As discussed in the staff memorandum for sketch plan approval submitted by Applicant, at least the large barn is also listed in the State Register of Historic Places and in the Town Plan. Neither party provided the 2001 Town Plan or the State Historic Register.

The preliminary plan approval for this subdivision was not appealed, and therefore cannot be challenged in the present proceeding, either directly or indirectly. 24 V.S.A. §4472(d). It contained the following condition with respect to the structures on proposed Lot 6:

> The site also includes several structures identified in the Town Plan as part of a historic cluster. The applicant provides a study of the large barn on the property, indicating that the barn was built in the late 20th century. However, no information is provided about the smaller shed, which appears to be a part of the 19th century farmstead cluster. It is recommended that some study be done on the smaller structure and that the applicant preserve it should such study find it historically significant. Any Final Plan submission needs to include a statement regarding what analysis has been conducted and what are the applicant's plans for the historic structures.

In the cover letter to its final application which is before the Court in the present appeal, Appellee-Applicant referred to the previously-submitted study to propose that the large barn is not historically significant and therefore is not proposed to be retained, but that:

> [w]ith regards to the smaller structure to the east of the barn (labeled as stable), this appears to be the oldest structure of all the structures on lot #6. Since no evaluation has been performed on this structure, a note has been added to sheet #1 of the plans as follows[:] "Existing stable building to remain until a historic resource evaluation is performed and submitted to the Town Community Development Director for review."

3

Appellee-Applicant has moved for summary judgement on all seven questions in Appellants' Statement of Questions, arguing that there is no genuine issue as to any material fact and that Appellee-Applicant is entitled to judgment as a matter of law. Vermont Rule of Civil Procedure (V.R.C.P.) 56(e) provides that when a motion for summary judgment is made and supported by a statement of facts as required under V.R.C.P. 56(c)(2), the party opposing the motion for summary judgment "may not rest upon . . . mere allegations or denials," but rather "must set forth specific facts showing that there is a genuine issue for trial." As explained in V.R.C.P. 56(c)(2), all of the material facts set forth in the statement supporting the motion for summary judgment will be deemed to be admitted, unless controverted by the statement of facts filed by the party opposing the motion. The purpose of this requirement is to determine in advance of the trial whether a trial is necessary on each of the issues in the appeal; that is, whether the party opposing the motion for summary judgment has sufficient contrary evidence to present at trial. See, e.g., Tierney v. Tierney, 131 Vt. 48, 52 (1972); Gilman v. Maine Mut. Fire Ins. Co., 175 Vt. 554, 556 (2003); Travelers Ins. Companies v. Demarle, Inc., 2005 VT 53, ¶6.

Question 1 of Appellants' Statement of Questions

Question 1 of the Statement of Questions asks the Court to determine whether the subdivision should be approved, in light of language specifically protecting the parcel from development in the 1991 and 1994 versions of the Town Plan. Appellee-Applicant argues that the current Town Plan, as adopted in 2001, contains no provisions specifically protecting this parcel. Although Appellee-Applicant has not provided a copy of the 2001 Town Plan, and nor have Appellants provided the sections of the 1991 and 1994 Town Plans to which they refer, Appellants do not dispute that the protective language was not included in the 2001 Town Plan.

The Court appreciates the effort expended by Mr. McCormack and his mother, artist

4

Lois Foley, as described in Appellants' November 10, 2005 filing, as well as in Mr. Koval's February 2, 2006 filing and in Mr. McCormack's filings in response to the motion for summary judgment, towards the protection of this portion of the former Naylor farm in the 1991 and 1994 Town Plans. However, it is up to each municipality to decide what it wishes to include or delete from its municipal plan and its zoning and subdivision ordinances. It is the Court's role only to apply those provisions to the application before it. In the present case, the Court can only apply the provisions of the Town of Essex Town Plan that was in effect at the time of the application. As it is undisputed that any protection of this property that may have existed in the 1991 and 1994 Town Plans was deleted from the 2001 Town Plan, Appellee-Applicant's motion for summary judgment on Question 1 must therefore be granted.

Question 2 of Appellants' Statement of Questions

Question 2 of the Statement of Questions asks the Court to determine whether the subdivision should be approved in light of a recommendation made by an unnamed environmental group to the Planning Commission, allegedly urging protection of the parcel. Appellee-Applicant merely argues that the statement alluded to does not appear "in the record" of the Planning Commission's proceedings, and that 5.3 acres of the project near the river are being donated to the Town, as well as a conservation easement and a "trail and horseback" easement. However, because this appeal is not an on-the-record appeal, the question for this court is not whether a particular statement is "in the record," but whether material facts are disputed by Appellants, as to the applicable criteria for subdivision approval. Neither party has specified the standards applicable to Question 2 of the Statement of Questions; they appear to be found in §§10.1.14, 10.13.1, 10.13.5, 10.15, and/or 10.1.2 of the Subdivision Regulations.

Appellee-Applicant's motion for summary judgment argues, at least implicitly, that

5

the 5.3 acres of the project near the river being donated to the Town, together with the conservation easement and the "trail and horseback" easement, satisfy the applicable criteria. Accordingly, if Appellee-Applicant identifies the applicable review criteria in its motion, that motion for summary judgment on Question 2 would be granted unless Appellants can provide the Court with specific facts showing that there is a genuine issue for trial on this question.

As the trial is now scheduled to commence on April 11, 2006, and to continue, if necessary, on April 21 and/or April 27, 2006, on or before March 15,[2] 2006, Appellee-Applicant shall file any supplemental memorandum relating to its motion for summary judgment on Question 2, including what review criteria Appellee-Applicant argues are applicable to Question 2.  On or before March 20,[3] 2006, Appellants shall file any supplemental V.R.C.P. 56(c)(2) statement of facts, specifying the review criteria Appellants argue are applicable to Question 2, and providing the environmental group's recommendation or other affidavit in support of their argument that material facts are in dispute, and shall disclose the witnesses who will be called to testify about that recommendation.  The Court will rule on the following day whether any issue remains for trial on Question 2 of the Statement of Questions, so that, if any issue remains, the parties may conduct any necessary discovery in preparation for trial.

Question 3 of Appellants' Statement of Questions

Question 3 of the Statement of Questions asks the Court to determine whether the subdivision should be approved as proposed, or instead whether "alternative layouts and ideas that better protect the scenic and historic nature of the site" should be given "honest

---

[2] The date the documents must be <u>received</u> at the Court and by the other parties.

[3] The date the documents must be <u>received</u> at the Court and by the other parties.

consideration." Appellee-Applicant argues that the subdivision was designed with house sites placed in locations to minimize the effect on the scenic nature of the land, and that the house sites were moved several times in response to issues raised in the unappealed sketch plan and preliminary plan decisions by the Planning Commission, addressing concerns regarding the potential for riverbank erosion and the protection of scenic resources. In their responsive memoranda, Appellants propose alternative ideas, including a historical museum, community gardens, and an arts and crafts center.

The municipal process of subdivision plan review merely compares a particular subdivision proposal for a particular property to the standards for subdivision approval under, in this instance, Article X of the Subdivision Regulations. In this <u>de novo</u> proceeding, this Court only has authority to stand in the shoes of the Planning Commission to consider the application against those standards, not to suggest or require an applicant to submit any alternative proposals. Appellee-Applicant's motion for summary judgment on Question 3 must therefore be granted.

<u>Question 4 of Appellants' Statement of Questions</u>

Question 4 of the Statement of Questions asks the Court to determine whether, instead of the proposed residential subdivision, agricultural use of the parcel should be required, as the district is zoned as Agricultural Residential. In the Zoning By-Laws pertaining to the Agricultural Residential district, the purpose statement (§3.0) gives equal weight to "promot[ing] the continuation of agriculture and open space on lands so suited" and to "facilitat[ing] rural residential development." Nor do the Subdivision Regulations require agricultural use of land in the Agricultural Residential district. Single family residences are a permitted use in the Agricultural Residential district. Appellee-Applicant's motion for summary judgment on Question 4 must therefore be granted.

7

<u>Question 5 of Appellants' Statement of Questions</u>

Question 5 of the Statement of Questions asks the Court to determine whether the subdivision should be approved, given that adjoining properties contain an historic house and an historic former schoolhouse; a state-recognized deer resting area; and wildlife habitat for moose, turkey, hawk, and bear.  As with Question 2 discussed above, neither party has specified the standards applicable to Question 5 of the Statement of Questions from the Subdivision Regulations.  Unless there are review criteria in the Subdivision Regulations that require assessment of a subdivision's effect on features found on neighboring or more distant property, Appellee-Applicant's motion for summary judgment on Question 5 must be granted.

Further, Appellee-Applicant argues that these features are located across the road[4] and some distance away from the property proposed for development, and that they would not be affected by the development proposal. Appellants' February 2, 2006 filing argues that the deer resting area is separated from the proposed development by twelve-foot-wide road, but does not present any countering information to suggest that there are disputed issues of fact as to the location or the effect of the proposed subdivision on the listed features.  Therefore, even if there are applicable review criteria in the Subdivision Regulations, the motion must be granted  unless Appellants can provide the Court with specific facts showing that there is a genuine issue for trial on this question.

As the trial is now scheduled to commence on April 11, 2006, and to continue, if necessary, on April 21 and/or April 27, 2006, on or before March 15,[5] 2006, Appellants shall file any supplemental V.R.C.P. 56(c)(2) statement of facts, and shall specify the review

---

[4] Except for the schoolhouse adjacent to Lot 7, which is now a residence and which Appellee-Applicant argues also would not be affected.

[5] The date the documents must be <u>received</u> at the Court and by the other parties.

criteria Appellants argue are applicable to Question 5, and shall provide any facts in support of their argument that material facts are in dispute on this question, together with disclosure of any witnesses who will be called to testify about this issue. On or before March 20,[6] 2006, Appellee-Applicant shall file any supplemental memorandum relating to its motion for summary judgment on Question 5, including coverage of whether any review criteria are applicable to Question 5. The Court will rule on the following day whether any issue remains for trial on Question 5 of the Statement of Questions, so that, if any issue remains, the parties may conduct any discovery in preparation for trial.

Question 6 of Appellants' Statement of Questions

Question 6 of the Statement of Questions asks the Court to determine whether the subdivision should be approved, given the historical significance of the barn and the property and the presence of historical artifacts excavated in the area.[7] Within the standards for subdivision approval in Article X of the Subdivision Regulations, §10.1.14 requires the proposed subdivision to "include preservation of natural assets such as streams, . . . agricultural land, attractive scenic areas, and historic sites," and §10.13.1 requires that "[o]utstanding natural features of the site, including groves of trees, watercourses and falls, historic sites, exceptional views, and similar irreplaceable assets, shall be preserved."

---

[6] The date the documents must be <u>received</u> at the Court and by the other parties.

[7] As to the items excavated by Mr. McCormack, material facts are in dispute as to whether the "dozens of Civil War relics" Mr. McCormack asserts he has found on the property were found on the subdivision property itself or on nearby land that had been part of the larger farm parcel in the past. However, unless a state permit is required for this property, the state law on archeological sites does not appear to apply. 22 V.S.A. §767(1).

9

The unappealed preliminary plan decision required Appellee-Applicant to include in the final plan application a statement regarding what historic analysis has been conducted of the 19th century farmstead cluster and what are the applicant's plans for the historic structures. Appellee-Applicant's notation that the "[e]xisting stable building [is] to remain until a historic resource evaluation is performed and submitted to the Town Community Development Director for review," does not satisfy the requirement of the preliminary plan decision as to the stable (and as to the shed, which is not mentioned at all), as it is the Planning Commission (or this Court on appeal) and not the Community Development Director which must determine whether the final plan meets the standards for subdivision approval.

Accordingly, for this reason alone Appellee-Applicant's motion for summary judgment on Question 6 must be denied, and will be addressed at the trial now scheduled to commence on April 11, 2006, and to continue, if necessary, on April 21 and/or April 27, 2006.

Moreover, in connection with its earlier preliminary plan application, on March 11, 2005, Appellee-Applicant provided the Planning Commission with an assessment of the barn, prepared by Peter Marsh of Building Inspection Services of Vermont. Neither the assessment itself nor Mr. Marsh's qualifications has been provided to the Court. Appellee-Applicant's cover letter[8] to its submission stated that the evaluation concluded that the barn is "a common, post World War II dairy barn with low historical and cultural importance." On April 5, 2005, the Town Conservation Committee had submitted recommendations[9] to the Planning Commission at the preliminary plan approval stage of these proceedings, recommending against approval of the project as proposed and stating:

---

[8] Attachment E to Appellee-Applicant's Motion for Summary Judgment, at 1.

[9] Attachment F to Appellee-Applicant's Motion for Summary Judgment, at 2-3.

10

The barn and out-structures extant on the property to be developed are notable for their connection to the farming heritage of Essex. These structures have been identified in the 2001 Essex Town Plan as Historical Sites (Essex Town plan, Map 19). On our site visit, it was noted that although one of the structures is a mid-twentieth century barn addition, the other structures appear to date to the nineteenth century, and to be contiguous with other preserved structures in adjacent parcels (for example, the 19th century farmhouse directly across Weed Road). Destruction of these structures would further the loss of historical sites within the Town.

At trial the parties should be prepared to address the historical significance of all three of the structures on Lot 6, both intrinsically and in relation to other nearby buildings, as well as to provide the 2001 Town Plan and the zoning ordinance with respect to any definition of the term "historic site."

Question 7 of Appellants' Statement of Questions

Question 7 of the Statement of Questions asks the Court to determine whether the subdivision should be approved, considering the value of the parcel for agriculture due to "its fertile dark soils and southern exposure." While analysis of the need for preservation of agricultural soils may be required under Act 250, the present appeal is only an appeal of the municipal subdivision approval. The question of whether this project does or does not require Act 250 review is not before this Court in this proceeding; that question must be posed in the first instance to the District Coordinator of the applicable District Environmental Commission. If Act 250 were applicable, the Court would consolidate the Act 250 and municipal appeals to be heard together.

In Article X of the Subdivision Regulations, §10.1.14 requires the proposed subdivision to "include preservation of natural assets such as streams, . . . agricultural land, attractive scenic areas, and historic sites" (emphasis added). Therefore the issue of whether the proposal adequately preserves agricultural land (as opposed to agricultural soils) may

11

properly be before the Court, if any facts are contested on this issue.

Appellee-Applicant's description of the proposed project in its motion for summary judgment stated that the site is composed of a field sloping down to the banks of the river and that the land was farmed by Harold Whitcomb, who grew only cow corn and hay on the land. Appellee-Applicant's motion for summary judgment on Question 7 should be granted, unless Appellants can provide the Court with specific facts showing that there is a genuine issue for trial on this question. As the trial is now scheduled to commence on April 11, 2006, and to continue, if necessary, on April 21 and/or April 27, 2006, on or before March 15,[10] 2006, Appellants shall file any supplemental V.R.C.P. 56(c)(2) statement of facts in support of their argument that material facts are in dispute on Question 7, together with disclosure of any witnesses who will be called to testify about this issue. On or before March 20,[11] 2006, Appellee-Applicant shall file any supplemental memorandum relating to its motion for summary judgment on Question 7. The Court will rule on the following day whether any issue remains for trial on Question 7 of the Statement of Questions, so that, if any issue remains, the parties may conduct any discovery in preparation for trial.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellee-Applicant's Motion for Summary Judgment on Questions 1, 3, and 4 is GRANTED. Appellee-Applicant's Motion for Summary Judgment on Question 6 is DENIED. The Court's ruling on Appellee-Applicant's Motion for Summary Judgment on Questions 2, 5 and 7 is postponed until March 20, 2006, to give the parties the opportunity to provide the Court with specific facts showing whether or not there is a genuine issue for trial on these questions; the ruling on those questions will be issued on March 21, 2006 on

---

[10] The date the documents must be <u>received</u> at the Court and by the other parties.

[11] The date the documents must be <u>received</u> at the Court and by the other parties.

12

the basis of whatever is received at the Court before 4:30 p.m. on March 20, 2006.

The trial now scheduled to commence on April 11, 2006, and to continue, if necessary, on April 21 and/or April 27, 2006, will proceed on Question 6, and will proceed on Questions 2, 5 and 7 if the Court finds there are genuine issues of fact for trial on any of these latter questions.

Done at Berlin, Vermont, this 8th day of March, 2006.

_____
                     Merideth Wright
                     Environmental Judge